[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-13852
_____

D.C. Docket No. 02-60199-CV-AJ

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2007
THOMAS K. KAHN
CLERK

JOHN WATTS,

Plaintiff-Appellant,

versus

FLORIDA INTERNATIONAL UNIVERSITY,
BOARD OF REGENTS OF THE STATE OF FLORIDA,
MODESTO MAIDIQUE,
PSYCHIATRIC INSTITUTE OF DELRAY, a Florida corporation,
KAREN SOWERS-HOAG,
PHYLLIS SINGERMAN,
JOSEPH SALLUZZI,
FIU BOARD OF TRUSTEES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 17, 2007)**

Before TJOFLAT, CARNES and HILL, Circuit Judges.

CARNES, Circuit Judge:

This is an appeal by John Watts from the dismissal under Fed. R. Civ. P. 12(b)(6) of his amended complaint claiming, among other things, that because of his religious beliefs he was terminated from a practicum position, which led to his dismissal from a seminar and prevented him from earning his master's degree at a state university.

## I.

Given the procedural posture of the case, we view the allegations in the amended complaint in the light most favorable to Watts. While the true facts may be other than those alleged, for present purposes it does not matter. The allegations, construed favorably to Watts, are what count.

In 1995 Watts enrolled in the Master of Social Work program at Florida International University, a state university. He was scheduled to graduate in May of 1997. To complete the program and earn his degree, Watts had to take a course called "Field Practicum II." According to FIU's graduate catalog, Field Practicum II was a "516-clock hour supervised educational experience in an agency setting designed to provide the student with an opportunity to develop and practice social work skills in the student's area of concentration." Watts registered for the course, paid his tuition, and was assigned to Fair Oaks Hospital, a private psychiatric

2

institution affiliated with FIU for purposes of the practicum.  While in the practicum Watts worked under the supervision of Phyllis Singerman, an FIU graduate field instructor and advisor, and Joseph Salluzzi.  Salluzzi was also a field instructor, but it is unclear whether he worked for FIU or Fair Oaks.  In the spring of 1997, Watts was counseling a patient at Fair Oaks who "lacked a diagnosis."  After questioning the patient, Watts, consistent with his training, recommended that the patient join a bereavement support group.  The patient asked where she could find such a group.  Watts, who had noticed on the patient's assessment form that she was Catholic, included "church" in the options he told her about.  Nothing he said violated any guidelines or requirements of the MSW program.

Shortly thereafter, Watts received a letter on Fair Oaks letterhead which was signed by Salluzzi and Singerman, terminating him from the practicum.  This is what it said:

> This letter has been drafted in order to make John Watts aware of his practicum termination at Fair Oaks Hospital on 4/1/97.
>
> The decision has been based on inappropriate behavior related to patients, regarding religion.  This is the second such incident where personal boundaries have intruded into professional conduct.
>
> The first counseling was verbal, and included Phyllis L. Singerman (Graduate Field Instructor) and Joseph Salluzzi (Field Instructor).

3

Salluzzi and Singerman also orally informed Watts that "his termination was due to his religious speech." As a result of his termination from the practicum, Watts later received another letter dismissing him from "Field Practicum II," the related course in which he was enrolled at FIU. Because he was kicked out of the practicum and the course, Watts could not earn his master's degree at FIU.

According to Watts, Fair Oaks and Salluzzi "acted in such close concert with the state, and the state approved their actions, that their actions are fairly attributable to the state and they are deemed to be state actors for the purposes of 42 U.S.C. § 1983."[1]

## II.

Watts filed a lawsuit against FIU, the Board of Regents, the Board of Trustees for FIU, the corporate entity that owns Fair Oaks, Singerman, Salluzzi, and some others. The complaint asserted under 42 U.S.C. § 1983 three claims that the defendants' actions had violated Watts' constitutional rights to free speech,

---

[1] In quoting these state action allegations from the amended complaint, we do not mean to imply any view on their legal validity. The district court did not find it necessary to reach that issue, and we decline to address it in the first instance. Instead, we will assume for present purposes that Fair Oaks and Salluzzi were state actors and, accordingly, as an employee of Fair Oaks during the practicum Watts was an employee of the state. We leave it to the district court to determine in the first instance whether there actually was state action so that Watts was a government employee.

4

free exercise of religion, and procedural due process. It also put forward twelve state law claims.

In granting the defendants' motion to dismiss, the district court did not address their assertion that Fair Oaks and Salluzzi were not state actors for purposes of the federal claims. Instead, the court ruled that the allegations failed to state a claim for violation of federal law regardless of state action. As for the state law claims, the court declined to exercise supplemental jurisdiction over them and dismissed them without prejudice. Well, more or less. More about that at the end of this opinion, but for now we turn to the federal claims.

### III.

The district court reached its conclusion that Watts' free speech claim should be dismissed by applying the employee speech case of Pickering v. Board of Education, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734 (1968), and its progeny. The Pickering decision recognized that government "has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." Id. at 568, 88 S. Ct. at 1734. Still, the Supreme Court "unequivocally rejected" the notion that government employees relinquish their right to comment on matters of public concern. Id. Because Pickering had spoken on an issue of public

5

importance and there was no evidence that he had knowingly or recklessly made false statements, the Court held that the school board had infringed on his First Amendment rights by dismissing him from public employment.  Id. at 574, 88 S. Ct. at 1738.

By contrast, when public employees speak on matters of private concern, the First Amendment protection is not as extensive.  See generally Connick v. Myers, 461 U.S. 137, 103 S. Ct. 1684 (1983).  In the Connick case the Court explained that while the state generally is prohibited from punishing the expression of private sentiments:

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

Id. at 147, 103 S. Ct. at 1690.  The district court rightly found that Watts spoke on a matter of private concern.  His speech provided private counsel to a single patient within the confines of a counseling session.  If Pickering is the appropriate yardstick, Watts loses.

Watts argues, however, that the standard to apply is not the Pickering test but the one governing student speech that is set out in Tinker v. Des Moines

6

Independent Community School District, 393 U.S. 503, 89 S. Ct. 733 (1969), and its progeny. In that case the Supreme Court famously proclaimed that neither students nor teachers "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Id. at 506, 89 S. Ct. at 736. Less famously, the Court said that the First Amendment rights of students and teachers must be "applied in light of the special characteristics of the school environment." Id. In that special light, school officials may be justified in prohibiting particular expressions where there is a showing that engaging in the forbidden conduct would "materially and substantially interfere with . . . appropriate discipline in the operation of a school." Id. at 509, 89 S. Ct. at 738 (quotation marks omitted). Watts argues that because he was a student, the state can only regulate his conduct under the Tinker test, which limits the government's power more than the Pickering test does.

The assumption underlying Watts' contention is that because the state has some power to regulate his speech as a student of FIU, it cannot also exercise its power to regulate his speech as an employee of Fair Oaks. Tinker gives the state a limited power to restrict speech that materially and substantially interferes with the operation of a school. Id. Pickering, as modified by Connick, provides the state a broader power to regulate the private speech of its employees. Connick, 461 U.S.

7

at 147, 103 S. Ct. at 1690. Had Watts not been a student as well as a government employee, the state plainly would have been entitled to the greater leeway the Pickering test affords it. The fact that the state could have attempted to assert its authority over Watts as a student, subject to the Tinker restrictions, does not prevent the state from asserting its authority over him as an employee, subject to the Pickering test instead. In any event, once Watts the employee was terminated from his employment in the practicum, Watts the student could not complete the course which included the practicum. Without that course he could not earn his degree. The action that led to the results about which Watts complains is his termination from employment in the practicum, and to that pivotal action the Pickering test applies.

As we have already indicated, judged under Pickering, the termination of Watts from the practicum because of what he said during the private counseling session does not violate the Free Speech Clause of the First Amendment. The district court correctly dismissed that claim.

## IV.

The district court was also correct in dismissing the due process claim. Assuming that Watts held a property right in his graduate school education, he has not been denied constitutionally adequate due process. Because a violation of

8

procedural due process is not complete "unless and until [a] State fails to provide due process . . . the state may cure a procedural deprivation by providing a later procedural remedy." McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc) (citation and quotation marks omitted).  Only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation become actionable.  Id.  The district court identified several Florida administrative code sections and state court decisions indicating that Watts could seek relief for his procedural deprivations in state court.  Watts' sole argument on appeal appears to be that an administrative appeal of his dismissal would have been futile.  Even if that is true, Watts has not presented any reason to believe that he could not receive a procedural remedy through a state court proceeding.  For that reason, the dismissal of the due process claim was proper.

## V.

Watts has, however, pleaded a valid First Amendment free exercise of religion claim.  The district court dismissed this claim because it concluded that Watts had not alleged that the termination of his practicum employment for his statement to the counseling patient had substantially burdened his observation of a central religious belief.  That is the wrong standard.  To plead a valid free exercise

9

claim, Watts must allege that the government has impermissibly burdened one of his "sincerely held religious beliefs." Frazee v. Ill. Dep't of Employment Sec., 489 U.S. 829, 834, 109 S. Ct. 1514, 1517 (1989). In numerous decisions, beginning as far back as 1955, the Supreme Court has used the phrase "sincerely held" to describe the type of religious belief or practice eligible for protection under the Free Exercise Clause. See, e.g., Witmer v. United States, 348 U.S. 375, 377, 75 S. Ct. 392, 393 (1955); Frazee, 489 U.S. at 834, 109 S. Ct. at 1518. We have used that "sincerely held" language as well. See, e.g., Benning v. Georgia, 391 F.3d 1299, 1313 (11th Cir. 2004).

"Sincerely held" is different from "central," and courts have rightly shied away from attempting to gauge how central a sincerely held belief is to the believer's religion. It is true that in Hernandez v. Commissioner, 490 U.S. 680, 109 S. Ct. 2136 (1989), the Supreme Court described the type of religious belief or practice that the First Amendment shields from substantial government burden as "a central religious belief or practice." Id. at 699, 109 S. Ct. at 2148. After using that phrase, however, the Court pulled back from it in the very next sentence, stating: "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." Id.

10

If those two sentences in <u>Hernandez</u> left any doubt about whether the judiciary should determine the "centrality" of a specific belief, the Court removed that doubt the next year in <u>Employment Division, Department of Human Resources v. Smith</u>, 494 U.S. 872, 110 S. Ct. 1595 (1990). There, the Court wrote: "It is no more appropriate for judges to determine the 'centrality' of religious beliefs before applying a 'compelling interest' test in the free exercise field, than it would be for them to determine the 'importance' of ideas before applying the 'compelling interest' test in the free speech field." <u>Id.</u> at 886–87, 110 S. Ct. at 1604. The Court asked in <u>Smith</u>: "What principle of law or logic can be brought to bear to contradict a believer's assertion that a particular act is 'central' to his personal faith? Judging the centrality of different religious practices is akin to the unacceptable business of evaluating the relative merits of differing religious claims." <u>Id.</u> at 887, 110 S. Ct. at 1604 (some quotation marks omitted). It concluded: "Repeatedly and in many different contexts, we have warned that courts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim." <u>Id.</u> While the Free Exercise Clause may be aimed primarily at protecting "central" religious practices, it is beyond the competence of the courts to determine the centrality of a particular religious belief

11

or practice. The test is sincerity, not centrality. And it is sincerity that Watts was required to plead.

With what specificity must sincerity be pleaded? We have held many times when discussing a Rule 12(b)(6) motion to dismiss, that "the pleadings are construed broadly," e.g., Levine v. World Fin. Network Nat'l Bank, 437 F.3d 1118, 1120 (11th Cir. 2006), and that the allegations in the complaint are viewed in the light most favorable to the plaintiff, e.g., Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998). Of course, "a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, ___, 127 S. Ct. 1955, 1965 (2007). While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.

The Supreme Court's most recent formulation of the pleading specificity standard is that "stating such a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. Id. The standard is one of "plausible grounds to infer." Id. The Court has instructed us that the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal

12

evidence of" the necessary element.  <u>Id.</u>  It is sufficient if the complaint succeeds in "identifying facts that are suggestive enough to render [the element] plausible." <u>Id.</u>

Applying the teachings of <u>Twombly</u> and our decisions to the pleading issue in this case, the question is whether Watts has alleged enough facts to suggest, raise a reasonable expectation of, and render plausible the fact that he sincerely held the religious belied that got him fired.

How do you plead sincerity of belief?  One way is to state that the belief is, in fact, your religious belief.  Watts did that in paragraph twenty-six of the amended complaint:

> Mr. Watts is a Christian.  He is not Catholic.  Mr. Watts' religious beliefs include the belief that a patient who professes a religion is entitled to be informed if the counselor is aware of a religious avenue within the patient's religion that will meet the appropriate therapy protocol for the patient.  Mr. Watts' termination for his "religious speech" evidences Defendants' intent to compel Mr. Watts to act contrary to his religious beliefs and constitutes a substantial burden on the exercise of his religious beliefs.

The only fair reading of paragraph twenty-six is that Watts' religion included the sincere belief that a patient who herself professes religious faith is entitled to be informed of religious avenues for therapy.  That reading is reinforced by the additional allegation that when Watts was fired for acting on that belief it was

13

done with the intent to compel him to act contrary to his religious beliefs and imposes a substantial burden on them.  If Watts was not sincere  about the religious belief that got him fired, firing him for acting according to it could not have imposed a substantial burden on the exercise of his religious beliefs, as he has pleaded.

In Twombly terms, Watts has certainly alleged "enough factual matter (taken as true) to suggest" that his religious belief was sincerely held, 127 S. Ct. at 1965, putting forward "plausible grounds to infer" that it was sincerely held, id., and "identifying facts that are suggestive enough to render [the sincerity of his belief] plausible," id.  That is all that is required at this stage of the litigation.

Our dissenting colleague acknowledges that Watts has adequately pleaded the sincerity of his belief, but believes that he has failed to plead sufficiently that the belief is of a religious character.  See infra at 26–27.   We disagree with the dissent's position that Watts must plead facts sufficient for an objectively reasonable person to conclude that his belief is religious in nature.

Initially, we question whether a plaintiff could ever plead or proffer "objective" facts that his particular sincerely held belief is religious in nature. Religion is by its nature subjective.  As Kierkegaard wrote, "it is precisely in objective analysis that one loses the infinite personal and passionate concern that

14

is the requisite condition for faith, its ubiquitous ingredient, wherein faith comes into existence."[2]  If Watts could explain or prove objectively why his religion commanded the belief in question, it might no longer be a religious belief, or at least not one rooted in faith.

We need not delve far into philosophy, however, because the Supreme Court has at least twice instructed us not to engage in any "objective" test of whether a particular belief is a religious one.  See Thomas v. Review Bd. of the Ind. Employment Sec. Div., 450 U.S. 707, 101 S. Ct. 1425 (1981); United States v. Seeger, 380 U.S. 163, 85 S. Ct. 850 (1965).  In the Thomas case, the Court wrote that the resolution of whether a particular belief is religious in nature "is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."  450 U.S. at 714, 101 S. Ct. at 1430.  It is difficult to gauge the objective reasonableness of a belief that need not be acceptable, logical, consistent, or comprehensible to others.

The dissent characterizes Thomas as being about the verity of a plaintiff's purported religious beliefs rather than about whether those beliefs are religious in

---

[2] Søren Kierkegaard, Concluding Unscientific Postscript, in 2 Classics of Philosophy: Modern & Contemporary 907 (Louis P. Pojman ed. & trans., Oxford Univ. Press 1998) (1844).

15

character.  See infra at 32–33.  That is not how we read the case.   In its opinion the Supreme Court takes to task the lower court for concluding that Thomas' refusal to participate in the production of war materials was a "'personal philosophical choice rather than a religious choice.'"  Thomas, 450 U.S. at 714, 101 S. Ct. at 1430 (quoting Thomas v. Review Bd. of the Ind. Employment Sec. Div., 391 N.E.2d 1127, 1131 (Ind. 1979)).  In doing so, the Court squarely addresses the question of whether Thomas' beliefs were "beliefs rooted in religion" and explains how to go about "[t]he determination of what is a 'religious' belief or practice."  Id.  It instructs us that the resolution of that question does not turn on the judiciary's perception of the particular belief or practice.  Id.  Instead, "[t]he narrow function of a reviewing court in this context is to determine whether there was an appropriate finding that petitioner terminated his work because of an honest conviction that such work was forbidden by his religion."  Id. at 716, 101 S. Ct. at 1431. The honest (sincere) conviction that counts is that of the plaintiff, not that of the court.

Applying the holding of Thomas, Watts must plead that he believes his religion compels him to take the actions that resulted in his termination.  He need not plead now, or present later, "objective" evidence that his belief is of the type

16

that a judge would generally consider to be religious in nature.  Watts is not on the

hook for our inability to understand his religious system.

We also are unpersuaded by the attempt to distinguish Seeger.  See infra at

32 n.2.   While acknowledging that the Supreme Court in Seeger recognized that

the First Amendment protects beliefs that are, in the claimant's "own scheme of

things," religious, 380 U.S. at 185, 85 S. Ct. at 863, the dissent argues that:  "The

focus of the Seeger Court, however, was not the preclusion of any objective

weighing of whether a belief was religious, but rather, an attempt to harness any

extrajudicial weighing of the qualitative worth of any given religion," see id.   The

Seeger opinion does concern the latter point, but it also concerns the former.  The

following passage from the opinion addresses both points:

> As Mr. Justice Douglas stated in United States v. Ballard, 322 U.S.
> 78, 86, 64 S. Ct. 882, 886 (1944):  'Men may believe what they
> cannot prove.  They may not be put to the proof of their religious
> doctrines or beliefs. Religious experiences which are as real as life to
> some may be incomprehensible to others.'  Local boards and courts in
> this sense are not free to reject beliefs because they consider them
> 'incomprehensible.'  Their task is to decide whether the beliefs
> professed by a registrant are sincerely held and whether they are, in
> his own scheme of things, religious.

Id. at 184–85, 85 S. Ct. at 863.

Simply put, judges and juries must not inquire into the validity of a religious

doctrine, and the task of courts is to examine whether a plaintiff's beliefs are, "in

17

his own scheme of things, religious." Id.   The question is not whether the plaintiff's beliefs are religious in the objective, reasonable person's view, but whether they are religious in the subjective, personal view of the plaintiff.

For all these reasons, we conclude that a plaintiff need not prove the objective reasonableness of his religious belief.  But even if the dissent were correct that at some point in this litigation Watts will need to tender objective evidence of the nature of his belief, that point is not now.  The district court dismissed Watts' complaint under Rule 12(b)(6).  We are at the pleading stage, not the proof stage.

The dissent says that we must "ask whether a <u>reasonable</u> <u>person</u> would accept, without more, that [Watts' belief] is a <u>religious</u> belief, rather than a philosophical or professional belief," and require Watts to set forth specific facts supporting his position that it is a religious belief.  <u>See</u> <u>infra</u> at 30–31.  This formulation sounds remarkably like the standard governing the adjudication of motions for summary judgment, not motions to dismiss.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513 (1986) ("[I]n ruling on a motion for summary judgment . . . [t]he question . . . is whether a jury could reasonably find <u>either</u> that the plaintiff proved his case . . . <u>or</u> that he did not."); <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137 (1992)

18

("In response to a summary judgment motion . . . the plaintiff can no longer rest on . . . 'mere allegations,' but must 'set forth' . . . 'specific facts.'" (citations omitted)).  Even assuming that the questions posed by the dissent would be critical at summary judgment or at trial, all that is required in a complaint is "a short and plain statement of the claim."  Fed. R. Civ. P. 8(a)(2).

Even if we agreed with the dissent's objective-nature position, we would disagree with its position that Watts' specific allegation of his religious belief is not enough  because it is merely "a single statement assigning religious motivation to [his] belief."  See infra at 37.  How else does one plead a religious basis or motivation for a belief except by asserting it in a statement in a complaint?  Surely, the alleged fact is not deficiently pleaded, as the dissent implies, merely because it is stated only once—in a "single statement."  There is no basis in law or logic for requiring a plaintiff to make the same allegation two or more times in a complaint.  Once is enough.

The dissent hints at how a plaintiff should demonstrate the religious nature of a belief by citing Wisconsin v. Yoder, 406 U.S. 205, 92 S. Ct. 1526 (1972).  See infra at 31–32.  Yoder did not concern pleading requirements.  Instead, it involved an appeal by the state from a lower court's decision overturning a criminal conviction for violating a compulsory school-attendance law.  Id. at 207, 92 S. Ct.

19

at 1529. The Supreme Court examined whether "[t]he trial testimony showed that respondents believed . . . that their children's attendance at high school, public or private, was contrary to the Amish religion and way of life." Id. at 209, 92 S. Ct. 1530. It concluded, after examining the evidence presented at trial, that the respondents held a (subjective) belief that their opposition to the compulsory attendance law was based on religion. Id. at 219, 92 S. Ct. at 1535. The evidence presented at trial included "expert witnesses [who were] scholars on religion and education" who presented the history of the Amish people "in some detail, beginning with the Swiss Anabaptists of the 16th century." Id. at 209–10, 92 S. Ct. at 1530. The respondents' case was sufficiently detailed, in fact, that the Supreme Court spent more than two thousand words summarizing the relevant testimony. Id. at 209–13, 216–19, 92 S. Ct. 1530–35.

The Third Circuit decisions from which the dissent borrows its test likewise discuss evidence presented after the pleading stage. In Africa v. Pennsylvania, 662 F.2d 1025 (3d Cir. 1981), the court affirmed the district court's denial of an injunction after it had conducted an evidentiary hearing. Id. at 1025–26. In Malnak v. Yogi, 592 F.2d 197 (3d Cir. 1979), the court affirmed the entry of summary judgment against a school district for violating the Establishment Clause

after the defendants "had filed numerous depositions, answers to interrogatories, admissions, and other affidavits." Id. at 198.

We do not understand the dissent to suggest that future First Amendment litigants should add two thousand words to their complaints, detailing the contours of their religious beliefs. We have constantly preached to attorneys that they should avoid repetitious allegations and averments in complaints, warning against the reviled "shotgun pleadings" style. One of us has been particularly outspoken on the subject, always ready with the verbal cudgel to pound on those who file prolix and repetitious complaints, instead of the "short and plain statement of the claim" contemplated by Rule 8. See, e.g., Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 n.9 (11th Cir. 2002) (explaining that this Court has addressed unwieldy pleadings "on numerous occasions" and "always with great dismay"); Byrne v. Nezhat, 261 F.3d 1075, 1128–34 (11th Cir. 2001) (outlining in meticulous detail a district court's obligation not to permit duplicitous pleadings); Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996) (noting that repetition of allegations makes it "virtually impossible" to understand a complaint); Pelletier v. Zweifel, 921 F.2d 1465, 1518 (11th Cir. 1991) (warning attorneys against forcing the court to "sift through the facts" at the pleading stage).

21

Watts has stated in his amended complaint that his "religious beliefs include the belief" at issue here. His representation is all that is necessary to raise the possibility that his belief is a religious one "above the speculative level." Twombly, 127 S. Ct. at 1965; see Seeger, 380 U.S. at 184, 85 S. Ct. at 863 ("[T]he claim of the [plaintiff] that his belief is an essential part of a religious faith must be given great weight."). We are at a loss to understand how much more he could say in his complaint and still adhere to the Rule 8 model of "a short and plain statement of the claim." Of course, Watts could conceivably be prevaricating when he pleads that his belief is religious. Or maybe the defendants would say that he is mistaken about his religious beliefs, taking the position that Samuel Taylor Coleridge did when he wrote that: "You do not believe; you only believe that you believe."[3] But it is these possibilities, and not Watts' straightforward allegations, that are too speculative to be dispositive at this state in the litigation.

Of course, in allowing this claim to proceed, we express or imply no view on the ultimate merits, or lack of merit, of the claim. All we hold is that, if there is state action, see supra note 1, this claim is entitled to proceed to the next step in the litigation process.

---

[3] Thomas Carlyle, The Hero as Priest (May 15, 1840), in On Heroes, Hero-Worship and the Heroic in History 160 (Oxford Univ. Press 1974) (1841), quoting Samuel Taylor Coleridge, better known for penning the Rime of the Ancient Mariner.

22

## VI.

Although we are convinced that, subject to the state action question, Watts has stated a claim for a violation of his free exercise rights, we affirm the district court's ruling that qualified immunity applies to the state defendants whom Watts has sued in their individual capacities. The factual circumstances of this case are unusual. There were no decisions in 1997 addressing the free exercise rights of graduate students in a practicum. Watts seems to have admitted as much because he urged us to craft a new constitutional standard for precisely this situation, explaining that applying either employee speech or student speech cases to student internships is like trying to put "the proverbial square peg in a round hole." To decide unusual cases courts sometimes have to cut down pegs and bore out holes, but when such carpentry is necessary qualified immunity is appropriate. Because the individual defendants were not on notice that they were violating Watts' clearly established constitutional rights, the district court correctly granted them summary judgment in their individual capacities.

## VII.

There is one more matter we need to address. We said earlier in our opinion that the district court "more or less" (our term) had declined to exercise jurisdiction over the state law claims. Supra at 5. What the court did in its order

23

is state that in light of the dismissal of the federal claims, "I decline to exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3)," and "[t]hus, those claims are DISMISSED WITHOUT PREJUDICE" (capitalization in original). But then the court said:

> Because there may be an appeal, however, and in case I have erred in dismissing any of the federal claims, I will alternatively address some of the arguments made by the defendants as to the state law claims. Should the Eleventh Circuit affirm the dismissal of the federal claims, the following discussion will, of course, be nothing more than dicta and not be binding in subsequent state proceedings.

The district court proceeded to explain why some of the pleaded state law claims were not valid. Others it did not address on the merits. In the conclusion of the order, however, the district court stated that while the federal claims were dismissed with prejudice, under 28 U.S.C. § 1367(c) it was declining to exercise jurisdiction over the state law claims, which were "therefore DISMISSED WITHOUT PREJUDICE" (capitalization in original). It did not dismiss without prejudice only some of the state law claims, but all of them.

This is a pretty unusual approach, and we have no precedent exactly on point about how to handle it. We are sympathetic with the district court's desire to move things along should any part of its order addressing the federal claims be reversed on appeal, but at the same time the court did begin and end its discussion

24

of the state law claims with clear statements indicating that all of them were being dismissed without prejudice. The decisive point for us is that the most efficient way to handle this situation is to let the state law claims travel as a group and avoid any piecemeal appellate consideration of them. A lot can happen to a case on remand, and it may be that some or all of the state law claims are mooted or fall by the wayside for one reason or another. We will vacate the judgment as to all of them and remand them to the district court for further proceedings in light of our reversal of its judgment as to the federal free exercise claim. Obviously, we are not implying any view as to the merits of any of the state law claims.

## VIII.

The district court's judgment is **AFFIRMED** insofar as it dismissed with prejudice the federal free speech and procedural due process claims, but the judgment is **VACATED AND THE CASE IS REMANDED** for further proceedings insofar as the federal free exercise and all of the state law claims are concerned.

HILL, Circuit Judge, concurring:

My colleagues debate well. Concluding that the complaint does not affirmatively show that the appellant may not have a case, I concur in the opinion prepared for us by Judge Carnes.

Now, perhaps, the fact contentions will be developed and, if they should not be in dispute, the court can rule on existing, and not merely alleged, facts. Then, that ruling will determine something of value to the litigants – the resolution of the disagreement.

That is, after all, what the judicial branch is said to be about.

TJOFLAT, Circuit Judge, dissenting:

Although the majority is correct in holding that Watts must allege the impermissible burden of a "sincerely held religious belief," Frazee v. Illinois Dep't of Employment Sec., 489 U.S. 829, 834, 109 S. Ct. 1514, 1518, 103 L. Ed. 2d 914 (1989), in determining that Watts pleaded a valid free exercise claim, the majority conflates what are two distinct analyses under the First Amendment. As I set forth below, free exercise jurisprudence requires that a plaintiff plead both sincerity and the religious character of the plaintiff's belief. Because I conclude that Watts failed to plead sufficient facts supporting the religious character of the belief for which he seeks First Amendment protection, I respectfully dissent.

While a plaintiff seeking free exercise protection under the First Amendment must allege a sincerely held belief, sincerity alone is not enough – the belief must also be religious. See, e.g., Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531, 113 S. Ct. 2217, 2225, 124 L. Ed. 2d 472 (1993); Benning v. Georgia, 391 F.3d 1299, 1313 (11th Cir. 2004). Federal case law is replete with examples of courts articulating the threshold free exercise requirements as a two-part analysis. See, e.g., Lukumi, 508 U.S. at 531, 113 S. Ct. at 2226–27 (noting that the Court "must consider" the plaintiffs' free exercise claim because no question existed as to the plaintiffs' sincerity and the practice of

27

animal sacrifice was a religious belief); United States v. Seeger, 380 U.S. 163, 185, 85 S. Ct. 850, 863, 13 L. Ed. 2d 733 (1965) (describing a court's responsibility as deciding whether a plaintiff's beliefs are "sincerely held" and religious) (citing United States v. Ballard, 322 U.S. 78, 86, 64 S. Ct. 882, 886, 88 L. Ed. 1148 (1944)); Benning v. Georgia, 391 F.3d 1299, 1313 (11th Cir. 2004) ("[T]he First Amendment . . . requires [a court] to determine whether the asserted belief . . . is religious and sincerely held."); Martinelli v. Dugger, 817 F.2d 1499, 1504 (11th Cir. 1987) ("A claimant meets this initial burden, therefore, if he or she proves that the beliefs are truly held and religious in nature."); Sutton v. Rasheed, 323 F.3d 236, 251 (3d Cir. 2003) ("Only beliefs which are both sincerely held and religious in nature are protected under the First Amendment." (internal quotation marks omitted)); Wiggins v. Sargent, 753 F.2d 663, 666 (8th Cir. 1985) ("[O]nly sincerely held beliefs which are 'rooted in religion' are protected by the free exercise clause." (quoting Thomas v. Review Bd. of the Indiana Employment Security Division, 450 U.S. 707, 713, 101 S. Ct. 1425, 1429, 67 L. Ed. 2d 624 (1981))); Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984) ("This two-pronged command expressly delineates the contours of our inquiry – beliefs must be sincerely held and religious in nature to be accorded first amendment protection.") (footnote omitted); Callahan v. Woods, 658 F.2d 679, 683 (9th Cir. 1981) (noting

28

"two basic criteria" for free exercise protection: (1) that the proffered belief be "sincerely held" and (2) that the claim be rooted in religious belief and not secular concerns). In other words, in order for Watts to plead a proper free exercise claim, his complaint must not only allege sincerity of belief but also the religious character of that belief.

As the majority notes, the Supreme Court recently articulated the pleading standard applicable in the Rule 12(b)(6) context in Bell Atlantic Corp. v. Twombly, __ U.S. __, __, 127 S. Ct. 1955, 1964– 65 (2007). Under the current pleading regime, a plaintiff must provide more than conclusory grounds for relief. See id. at 1964–65 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels or conclusions . . . . " (internal quotation marks omitted)). Any "formulaic recitation of the elements of a cause of action" will not pass 12(b)(6) muster. Id. at 1965. For our purposes, then, in order to survive a motion to dismiss, Watts must allege facts pertaining to both his sincerity and the religious character of his belief that are sufficient to raise his right to relief "above the speculative level." Id. These alleged facts, of course, are viewed in the light most favorable to Watts. M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. 2006).

My dissent from the majority's determination that Watts pleaded facts sufficient for a free exercise claim arises not so much from what was said, but rather, what was left unsaid. To the extent that the majority finds that Watts alleged facts that render it plausible that he acted on the basis of a <u>sincere</u> belief, I have no quibble. At the pleading stage, the sincerity requirement for a valid free exercise claim is a <u>subjective</u> question best left for the broader and closer scrutiny possible in later proceedings. <u>See</u> <u>Witmer v. United States</u>, 348 U.S. 375, 381, 75 S. Ct. 392, 396, 99 L. Ed. 428 (1955) (describing the sincerity analysis in conscientious objector cases as "purely a subjective question"). Because the question of whether a plaintiff alleges a sincere belief is subjective – i.e., we assess sincerity with reference to the individual plaintiff's state of mind – absent the unlikely event of contravening facts in the complaint itself, viewing the facts alleged in the light most favorable to the plaintiff, the plaintiff will normally survive 12(b)(6) dismissal regarding the sincerity prong. The subjectivity of the sincerity question allows a plaintiff to survive a motion to dismiss simply by avowing that the given belief is sincere. There are no other facts that Watts need allege to support a plausible claim of his sincerity under <u>Twombly</u>. <u>See</u> <u>Twombly</u>, 127 S. Ct. at 1965.

Although the subjectivity latent in the sincerity analysis may confer a wider ambit of protection from 12(b)(6) dismissal, the same cannot be said for the analysis of the religious character of a plaintiff's beliefs. Unlike the assessment of a plaintiff's sincerity, a court's assessment of whether a plaintiff alleged facts sufficient to support a claimed religious belief is an objective question. That is, once we agree that Watts properly alleged a sincere belief, we must ask whether a reasonable person would deem his professed belief a <u>religious</u> belief. Confronted by the complaint before us, that assessment requires us to ask whether a <u>reasonable person</u>[1] would accept, without more, that "the belief that a patient who professes a religion is entitled to be informed if the counselor is aware of a religious avenue within the patient's religion that will meet the appropriate therapy protocol for the patient" is a <u>religious</u> belief, rather than a philosophical or professional belief. I dissent because I do not believe that Watts alleged sufficient facts under <u>Twombly</u> to state a religious belief.

Maintaining that a valid free exercise claim must involve a religious belief may seem an exercise in stating the obvious – but on the facts before us, to ignore

---

[1] I am in full agreement with the majority's contention that Watts need not plead now, or present later, objective evidence that "his belief is of the type that <u>a judge</u> would generally consider to be religious in nature." Presiding judges do not import their own perspectives onto an analysis of a plaintiff's free exercise pleadings.

the requirement that the plaintiff's belief be religious in character would be to set aside the precise reason for which I would affirm the district court's dismissal of Watts's claim. Determining what constitutes a "religious" belief is, admittedly, a delicate process. Despite that difficulty, as the Supreme Court stated in <u>Wisconsin v. Yoder</u>, 406 U.S. 205, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972), "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." <u>Id.</u> at 215–16, 92 S. Ct. at 1533. It is necessary, then, to maintain the analysis of whether a plaintiff properly pleaded a religious belief alongside a separate analysis of the plaintiff's sincerity. Sincerity is not a euphemism for religious ardor. If that were the case, any sincere act is sacrosanct – and potentially subject to constitutional protection. To interpret the First Amendment in such a fashion would stretch the scope of free exercise claims to an untenable degree.

In maintaining the necessity of following the distinct components of the constitutional test for a valid free exercise claim – a subjective inquiry as to the plaintiff's sincerity and an objective[2] inquiry as to whether the belief is religious in

_____

[2] A handful of courts have cited to language in <u>United States v. Seeger</u>, 380 U.S. 163, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965), suggesting that the task of a court faced with a free exercise claim is to determine whether the beliefs are, in the claimant's "own scheme of things," religious. <u>Id.</u> at 185, 85 S. Ct. at 863; <u>see, e.g.</u>, <u>Fifth Ave. Presbyterian Church v. City of New York</u>, 293 F.3d 570, 574 (2d Cir. 2002); <u>Africa v. Pennsylvania</u>, 662 F.2d 1025, 1030 (3d Cir. 1981) ("A court's task is to decide whether the beliefs avowed are: (1) sincerely held, and (2) religious in

character – I want to be clear as to what I am <u>not</u> maintaining as our free exercise jurisprudence. I am <u>not</u> suggesting an objective inquiry into the <u>verity</u> or <u>validity</u> of a plaintiff's purported religious belief; such speculation has been uniformly rejected. <u>See, e.g.</u>, <u>Thomas</u>, 450 U.S. at 714, 101 S. Ct. at 1430 ("[T]he resolution of [what constitutes a religious belief] is not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection."); <u>Ballard</u>, 322 U.S. at 87, 64 S. Ct. at 887 ("The religious views espoused by [the plaintiffs] might seem incredible, if not preposterous, to most people. But if those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect."); <u>Cooper v. Gen. Dynamics</u>, 533 F.2d 163, 166 n.4 (5th Cir. 1976) (noting that federal courts are "powerless . . . to evaluate the logic or validity of beliefs found religious and sincerely held");[3] <u>Patrick</u>, 745 F.2d at 157 ("It cannot

nature, in the claimant's scheme of things."). The focus of the <u>Seeger</u> Court, however, was not the preclusion of any objective weighing of whether a belief was religious, but rather, an attempt to harness any extrajudicial weighing of the qualitative worth of any given religion. <u>See Seeger</u>, 380 U.S. at 184–85, 85 S. Ct. 863 ("Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs. Religious experiences which are as real as life to some may be incomprehensible to others." (quoting <u>United States v. Ballard</u>, 322 U.S. 78, 86j, 64 S. Ct. 882, 886, 88 L. Ed. 1148 (1944))).

[3] This circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

33

be gainsaid that the judiciary is singularly ill-equipped to sit in judgment on the verity of an adherent's religious beliefs."). There is a distinct difference, however, between questioning the veracity or reasonableness of a claim and questioning whether the belief is objectively "religious." The latter is a foundational component of determining whether a plaintiff has pleaded a First Amendment free exercise claim. See Yoder, 406 U.S. at 216, 92 S. Ct. at 1533 (declaring that if the Amish plaintiffs asserted their claims due to their rejection of "contemporary secular values," such claims would rest on a basis that was "philosophical and personal rather than religious," and would "not rise to the demands of the Religion Clauses"). It cannot be the case that plaintiffs may go to trial on a free exercise claim merely by pronouncing that they possess a "sincere and religious belief" related to an act for which they seek First Amendment protection.

What, then, must a plaintiff plead with regard to the religious character of a belief in order to survive a 12(b)(6) motion to dismiss? Although no bright-line rule can exist, free exercise case law offers some insight. The Third Circuit, in Africa v. Pennsylvania, 662 F.2d 1025 (3d Cir.1981), suggested three "useful indicia" as to what might characterize a religious belief: (1) an engagement with "fundamental and ultimate questions having to do with deep and imponderable matters"; (2) existence as a component of a "belief-system as opposed to an

34

isolated teaching"; and (3) the possible presence of "certain formal and external signs." Africa, 662 F.2d 1025, 1032 (3d Cir. 1981) (citing Malnak v. Yogi, 592 F.2d 197, 207–10 (3d Cir. 1979). Although these "indicia" certainly do not represent an exhaustive list of features defining a religious belief, "it is important to have some objective guidelines in order to avoid Ad hoc justice." Malnak, 592 F.2d at 210 (emphasis added).

On close questions, determining whether a plaintiff has pleaded a religious belief will undoubtedly require a nuanced consideration of the complaint. Naturally, not every complaint setting forth a free exercise claim will require a particularly searching analysis. For example, a Mormon plaintiff seeking protection for actions related to a belief that individuals ought to be baptized posthumously may not need to plead much more than a statement of that belief – baptism is a well-known theological sacrament. Cf. Frazee, 489 U.S. at 834, 109 S. Ct. 1517–18 (concluding that the plaintiff's refusal to work on Sunday was due to a religious belief although he was not a member of a particular religious sect).

Other proffered beliefs, however, may present a more tenuous case as to their religious character. Where a plaintiff alleges a belief that seems to be "far more the product of a secular philosophy than of a religious orientation," or where the motivating concerns appear to be personal or social, rather than "spiritual or

other-worldly," a free exercise claim cannot go forward. Africa, 662 F.2d 1033–34 (arguing that if the plaintiff's concern that he be given a raw food diet was considered "religious," the First Amendment might need to protect a "host of individuals and organizations who espouse personal and secular ideologies"). Furthermore, although affiliation with a specific religious denomination or institution greatly simplifies the question of whether a particular belief is religious, lack of such membership is not dispositive. Frazee, 489 U.S. at 834, 109 S. Ct. at 1517–18 ("[W]e reject the notion that to claim the protection of the Free Exercise Clause, one must be responding to the commands of a particular religious organization."). That said, however, with closer questions – such as those that are outside recognized religious denominations or fail to point toward known theological tenets – a plaintiff, in order to raise plausible grounds for a free exercise claim, must allege more facts to support that claim.

Turning now to the complaint before us, I cannot say that Watts's belief that the Catholic patient he encountered in the spring of 1997 was entitled to hear "church" among bereavement support group options constitutes a religious belief. It may very well be the case that Watts is religious; it may very well be that he often acts upon particular religious beliefs. Membership in a given religious tradition, however, does not automatically grant the adherents of that religion First

36

Amendment protection. The particular belief Watts alleges must also be religious in character – but his complaint seems to allege a belief similar to those that could have been taken from the pages of a professional patient advocacy journal.

The only reference Watts makes to the religious character of his belief is the conclusory statement that his "religious beliefs include the belief that a patient who professes a religion is entitled to be informed if the counselor is aware of a religious avenue within the patient's religion that will meet the appropriate therapy protocol for the patient." This bare assertion would fail even under a broad notice pleading standard, which we have declared is not so liberal as to encompass "wholly conclusory allegations." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1272 (11th Cir. 2004) (quoting Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1273 (11th Cir. 2002) (vacated on other grounds)). That being the case, a single statement assigning religious motivation to the belief that a patient ought to be informed of an "appropriate therapy protocol" compatible with the patient's religion is clearly insufficient to constitute a viable free exercise claim under Twombly. The complaint, indeed, later states that "Mr. Watts was terminated from the Practicum because of private religious speech that was consistent with his training." The nominal attachment of religious belief onto an otherwise secular and professional decision (i.e., the decision to inform a patient

37

of a religious avenue for bereavement counseling) does not issue a carte blanche for free exercise protection.

In conclusion, I would find no error in the district court's dismissal of the free exercise claim in this case. Although our limited window into the facts suggests that the decision to terminate Watts may have been disproportionate, the federal courts can provide no remedy for the claims presented, and I would affirm the district court.