**DONE,** this 14th day of June, 2013.

Efren BLANC, Plaintiff,

v.

CITY OF MIAMI BEACH, Defendant.

Case No. 11–21568–CIV.

United States District Court, S.D. Florida.

Feb. 17, 2012.

Mayra Lizette Kadzinski, Kadzinski Law Firm, Boca Raton, FL, for Plaintiff.

Robert F. Rosenwald, Jr., City of Miami Beach, Miami Beach, FL, for Defendant.

## ORDER ON MOTION TO DISMISS

KATHLEEN M. WILLIAMS, District Judge.

THIS MATTER is before the Court on Defendant's Motion to Dismiss [D.E. 17]

and Motions for Sanctions [D.E.s 27 and 28]. A hearing was held in this matter on February 15, 2012. For the reasons discussed at the hearing and below, Defendant's Motion to Dismiss is DENIED IN PART and GRANTED IN PART and the Motions for Sanctions are DENIED (the Motion that pertains to Count I is denied without prejudice).

## I. Background

Plaintiff is a painter for the City of Miami Beach. Am. Comp. ¶ 4. Plaintiff is a fifty-eight year old black male of Cuban origin. *Id.* ¶ 3. Plaintiff filed an EEOC charge of discrimination against Defendant in October 2009.[1] *Id.* ¶ 5. The parties reached a settlement agreement with regard to the charge on December 7, 2009. *Id.* ¶ 6. The settlement agreement required that Plaintiff be provided commercial drivers' license ("CDL") training and that Plaintiff be transferred away from his then supervisor to another site at the same rate of pay. *Id.* ¶¶ 7–8. Plaintiff claims that although he was transferred to another site in January 2010, away from Supervisor Brian Pierre, that Mr. Pierre "has continued to harass and alter and affect Plaintiff's working conditions." *Id.* ¶ 9. Plaintiff alleges he has been ordered to return to work under Mr. Pierre on various occasions and that Mr. Pierre still monitors his work. *Id.* ¶¶ 9–10. Mr. Pierre has allegedly filed reports of Plaintiff's misconduct with Plaintiff's new supervisors in order to have Plaintiff removed from his current position. *Id.* ¶¶ 11–12. Plaintiff asserts that Mr. Pierre arranged to have Plaintiff transferred to a more demanding and rigorous position than his

1. The Court notes that Defendant has filed the Plaintiff's original EEOC Complaint, which is dated September 29, 2009. Because the Court is to take the allegations of the Complaint as true, and because the Court does not find that the difference between these two statements makes a material difference at this juncture, the Court has included the language from Plaintiff's Complaint. Plaintiff should be more specific in the future.

former position and has denied him the assistance he needs for the new job. *Id.* ¶¶ 13–14.

Additionally, Plaintiff claims that he sustained a work-related incident in September 2007 that has left him permanently injured.[2] Plaintiff provided a medical note to Defendant in August 2008, which set out certain physical lifting restrictions. *Id.* ¶ 17. Defendant allegedly told Plaintiff that "no job with those limitations is available to you." *Id.* Plaintiff has continued to fulfill his job responsibilities in spite of his medical condition, though Plaintiff claims his condition is worsening because of his workload. *Id.* ¶ 18, 21. Plaintiff filed an application for disability benefits, but withdrew his application because he would be unable to support his family with the benefits currently available to him under the Defendant's disability policy. *Id.* ¶¶ 19–20. Plaintiff asserts the Defendant's disability policy impermissibly discriminates solely on the basis of age—those over fifty-five receive a smaller benefit than those under fifty-five. *Id.* ¶¶ 22–25. Plaintiff filed a second complaint with the EEOC on May 12, 2010, alleging counts of retaliation under Title VII and age discrimination pursuant to the ADEA. The EEOC issued a right to sue letter on February 2, 2012. *Id.* ¶ 30. Plaintiff filed his complaint with this Court on May 3, 2011 [D.E. 1] and filed an amended complaint on August 1, 2011. [D.E. 14].

## II. Standard

■■■ To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007)). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long County,* 999 F.2d 1508, 1510 (11th Cir.1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dept. of Health and Human Services Ctrs. For Disease Control and Prevention,* 623 F.3d 1371, 1379 (11th Cir.2010); *see also Roberts v. Fla. Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir.1998). While a plaintiff need not provide "detailed factual allegations," a plaintiffs complaint must provide "more than labels and conclusions." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal of a complaint because the court anticipates "actual proof of those facts is impossible;" however, the "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289 (11th Cir.2007) (quoting *Twombly,* 550 U.S. at 545, 127 S.Ct. 1955).

## III. Analysis

### A. Retaliation

■■■ When a plaintiff relies on circumstantial evidence to prove a case of discrimination under Title VII, the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) applies. *See Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1264 (11th Cir.2010). "Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee 'because he has opposed any

---

**2.** Plaintiff acknowledges that his medical providers are split on how much of his injury is work-related and how much of it is age related. Am. Compl. ¶ 16.

practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Id.* at 1268 (quoting 42 U.S.C. § 2000e–3(a)). "To make a prima facie showing of retaliation, the plaintiff must show: (1) that [ ]he engaged in statutorily protected conduct; (2) that [ ]he suffered adverse employment action; and (3) that there is some causal relation between the two events." *Id.* (quotation marks omitted).

■■■ The Supreme Court recently considered Title VII's anti-retaliation provisions. *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). In *Burlington,* the Court found that "anti-retaliation provisions, unlike the substantive provision [of Title VII], is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64, 126 S.Ct. 2405. Though a less stringent test than that applied to the substantive discrimination provision of Title VII, the anti-retaliation provision does not protect a person from all retaliation, "but from retaliation that produces an injury or harm." *Id.* at 67, 126 S.Ct. 2405. The test for whether the retaliation is actionable is whether "a reasonable employee would have found the challenged action materially adverse," which means that the conduct would have dissuaded a reasonable employee from filing a discrimination charge. *Id.* at 68, 126 S.Ct. 2405. "Whether a particular [action] is materially adverse depends on the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'" *Id.* at 71, 126 S.Ct. 2405 (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S.

75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

As an initial matter, the Court must determine how to properly assess the Plaintiff's claim. Plaintiff argues that Defendant is asking the Court to hold Plaintiff to a heightened pleading standard by requiring Plaintiff to comply with the *McDonnell Douglas prima facie* case laid out above. Plaintiff points the Court to *Swierkiewicz v. Sorema N.A.,* which held that "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a *prima facie* case of discrimination under the framework set forth in *McDonnell Douglas* ...." 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Defendant argues that *Swierkiewicz* has been expressly overruled by the new pleading standard set out in *Twombly* and *Iqbal.* The Court disagrees with Defendant. *Twombly* specifically distinguishes *Swierkiewicz*—"we do not require heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955. In *Henderson v. J.P. Morgan Chase Bank,* the Eleventh Circuit supported this analysis. 436 Fed.Appx. 935, 937 (11th Cir. 2011) *(per curiam ).* There, the court reiterated that an employment discrimination complaint need not present a *prima facie* case to survive a motion to dismiss. *Id.* Thus, while the *McDonnell Douglas* test provides a framework for the Court to consider whether the Plaintiff has pleaded a claim that is plausible on its face, Plaintiff need not dispositively meet the standard with factual specifics at this stage of the litigation.

There is no question that the Plaintiff was engaged in statutorily protected conduct when he filed his two EEOC claims. Defendant argues that as to the second and third prongs of the analysis, the Plain-

tiff has failed to meet even the *Twombly* pleading standard. As to the second prong, an adverse employment action, for purposes of the *prima facie* analysis, must be "a serious and material change in the terms, conditions, or privileges of employment in a real and demonstrable way." *Little v. Peach Co. School Dist.*, 2009 WL 198003 at *10 (M.D.Ga.2009) (citing *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir.2001)). Defendant urges the Court to adopt *Little*, where the Georgia court found that a lateral transfer with retention of full benefits, increased supervision and two written reprimands were insufficient to rise to the level of a "serious and material change" of the plaintiff's employment terms. *Id.* For instance, the written reprimands did not cause "tangible harm" to the plaintiff, and the transfer to a different location did not affect her "compensation, terms, conditions, or privileges of employment, nor did it otherwise deprive her of employment opportunities or adversely affect her status as an employee." *Id.* Defendant argues *Little* is directly on point, and the allegations of the Plaintiff fit squarely within the allegations of the plaintiff in that case.

■ The Court finds that *Burlington* compels rejection of Defendant's reliance on *Little* at this time. *Little* was decided at the summary judgment stage. Thus, the Court was able to view the alleged retaliation in the context of that particular plaintiff and determine that she suffered no real harm. As the Court in *Burlington* noted, "[c]ontext matters.... [For example,] [a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children." *Burlington*, 548 U.S. at 69, 126 S.Ct. 2405. Here, Plaintiff has alleged that he has been continually harassed by his former supervisor, that he has been transferred to a more rigorous position that exacerbates his alleged disability, and that he has been denied training and advancement. As the Supreme Court stated in Burlington, "[c]ommon sense suggests that one good way to discourage an employee ... from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable." *Id.* at 71, 126 S.Ct. 2405. Plaintiff has pleaded sufficient facts to show that he suffered adverse employment action for purposes of a motion to dismiss; Defendant is free to challenge these facts, after discovery, on a motion for summary judgment.

■ Defendant also asserts that Plaintiff has not met his burden to show causation between the alleged retaliation and the filing of his EEOC complaint. To show a causal connection, a plaintiff must show that the employer was aware of the protected conduct, and that the protected conduct and adverse action were not wholly unrelated. *Shannon v. BellSouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). In the absence of other evidence, a plaintiff may show causation by temporal proximity. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir.2006). A period of as much as one month is not too protracted a time period to create a genuine issue of causation. *See Wideman v. Wal–Mart Stores*, 141 F.3d 1453, 1457 (11th Cir.1998). The Eleventh Circuit has held that a lapse of three months between a protected activity and an adverse employment action is not sufficient "to create a jury issue on causation." *Drago*, 453 F.3d at 1308. Defendant urges the Court to apply this three month time frame and determine that there is no causal chain between the filing of Plaintiff's EEOC Complaint in October 2009 and the alleged retaliatory actions that occurred beginning in January

2010. The Court declines to do so at this juncture. Plaintiff has alleged that his EEOC Complaint *and* the negotiation and attempted enforcement of his settlement agreement caused retaliatory behavior. Defendant argues that the Plaintiff cannot allege that his attempted enforcement of his settlement agreement was protected behavior and thus the claim should be dismissed. The Court is not convinced that activities protected under Title VII are as narrow as Defendant claims, though the Court will not make a definitive decision on the issue until summary judgment when the factual allegations are fleshed out.[3] The cases Defendant points to for the proposition that only the filing of the EEOC claim is a protected activity are either inapposite or too narrowly described by Defendant. In *Schechter v. Georgia State University*, the Eleventh Circuit considered both an oral complaint to the school dean and the later written complaint to the EEOC to be statutorily protected activities. 341 Fed.Appx. 560, 562–63 (11th Cir.2009). In *Masso v. Miami–Dade County*, the Court simply held that filing an EEOC claim was a statutorily protected activity, not that it was the only such protected activity. 465 F.Supp.2d 1260, 1264 (S.D.Fla.2006). The Court is not prepared at this juncture, with no factual record, to conclusively determine that Plaintiff's potentially protected activities were "wholly unrelated" to the alleged adverse actions. Plaintiff has successfully pleaded a claim for retaliation for purposes of a motion to dismiss. While Defendant certainly may raise the issue of temporal causation on summary judgment, the Court will not undertake a factual determination of causation on the current record. Accordingly, the portion of Defendant's Motion that seeks to dismiss his retaliation clam is DENIED. Because the Court has found that Plaintiff's retaliation claim is sufficiently pled to survive a motion to dismiss, the Defendant's Motion for Sanctions as to the retaliation claim is also DENIED WITHOUT PREJUDICE.[4]

## B. Age Discrimination

Defendant argues that the Plaintiff's age discrimination claim fails because he does not have standing to bring it and his claim is not ripe for adjudication. The Court agrees that the controversy is not ripe for adjudication.[5] The Plaintiff claims that the Defendant's disability plan is discriminatory in that it allows a greater benefit to those under the age of fifty-five.[6]

---

**3.** Title VII makes it unlawful for an employer to discriminate against an employee "because he has made a charge, testified, assisted, or participated *in any manner* in an investigation, proceeding, or heading under this subchapter." 42 U.S.C. § 2000e–3 (emphasis added).

**4.** The Plaintiff was advised during oral argument that Defendant's affidavits attached to its motion for sanctions set forth a reasonable narrative that may prove a compelling argument that there has been no retaliation in this case. Because the Court does not feel that either side has had an opportunity to conduct discovery, the Court does not weigh the merits of those affidavits at this point. However, if Plaintiff's counsel becomes aware through the course of discovery that her client's claim has no basis, she is expected, as an officer of the Court, to comport herself accordingly.

**5.** The Defendant categorizes its argument as one of standing, but the cases cited by the Defendant focus primarily on the ripeness doctrine, which Defendant references and which the Court finds the most applicable. The Court will not make a factual finding as to whether Plaintiff would qualify for the disability plan, but instead finds that regardless of Plaintiff's disability status, the claim is not ripe.

**6.** The Defendant disputes the Plaintiff's characterization of the plan. The Court in no way adopts Plaintiff's description of the plan, but uses the description that Plaintiff used in his Complaint. Because the Court finds that

Am. Compl. ¶¶ 19–20. The Plaintiff asserts that he would have applied for disability were it not for the fact that his benefits would be less than those younger than he, and he would not be able to support his family on the benefits provided. *Id.*

 Federal courts are courts of limited jurisdiction, and "Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *United States v. Davenport,* 668 F.3d 1316 (11th Cir.2012) (quoting *Christian Coal. of Fla., Inc. v. United States,* 662 F.3d 1182, 1189 (11th Cir.2011)). "There are three strands of justiciability doctrine—standing, ripeness, and mootness—that go to the heart of the Article III case or controversy requirement."[7] *Id.* When the injury alleged in plaintiff's complaint has not yet occurred, a federal court may not exercise subject matter jurisdiction because an actual case or controversy does not yet exist for purposes of Article III. *Auerbach v. The Bd. of Educ. of the Harborfields Cent. Sch. Dist. of Greenlawn,* 136 F.3d 104, 108–09 (2d Cir.1998).

The Defendant's retirement plan states that to obtain disability benefits, an applicant must file a written application with the city and then specified physicians must certify, after a medical examination of the applicant, that such applicant is "totally incapacitated, mentally or physically, for the further performance of duty...." City of Miami Beach Retirement Plan, Ordinance No. 2006–3505, § 5.05 [D.E. 13–3]. Here, Plaintiff acknowledges that he filed a written application for disability benefits but withdrew it before it was processed, and that he has continued to work as a painter for the Defendant since withdrawing his application.

Plaintiff's claim here is not yet ripe. His claim is analogous to those of the unretired teachers in *Auerbach,* who sought to challenge the age related provisions of the school district's retirement plan. There, the court found that

[t]he injury alleged by the six teachers employed by the school district at the time of the commencement of this litigation was entirely speculative. When this action was initiated, these teachers had not retired and consequently, had not been denied any incentive benefits paid to their younger colleagues under the retirement plan. That is to say, they had suffered no injury in fact. These teachers maintained that if they retired while the current labor agreement was in effect, they would not receive the plan's benefits. This claim is contingent upon retirement. Nevertheless, the factual event forming the basis of the claim, i.e., their retirement, had not occurred at the commencement of the action. *Auerbach,* 136 F.3d at 109.

---

Plaintiff's claim is not ripe, the Court need not address the proper construction of the plan.

**7.** Plaintiff's argument that the ADEA somehow changes the standing requirements of Article III is unavailing. Plaintiff claims that because the ADEA uses the language "any person aggrieved may bring a civil action in any court of competent jurisdiction ...," that the ADEA's standard for standing and ripeness is different than with other cases and controversies. The Court finds no basis for this argument. As the case law that the

Plaintiff himself cites makes clear, the ADEA is constrained by the requirements of Article III. *Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 209, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (indeed, the Supreme Court recently narrowed the definition of "person aggrieved" from the *Trafficante* definition—"the term "person aggrieved" must be construed more narrowly than the outer bounds of Article III [suggested in Trafficante]." *Thompson v. N. Am. Stainless, LP,* —— U.S. ——, 131 S.Ct. 863, 896, 178 L.Ed.2d 694 (2011)).

The analysis of the Auerbach court is entirely appropriate here. Plaintiff's claim is that he would not receive appropriate benefits if he were to request and receive permanent disability. Such a claim is contingent upon Plaintiff's request and receipt of permanent disability status, which he has not sought. As such, Plaintiff's claim is not ripe for adjudication and is DISMISSED WITHOUT PREJUDICE. Although the Plaintiff's claim is properly dismissed, the Court does not find that sanctions are appropriate because the claim does not rise to the level of being objectively frivolous. As such, Defendant's Motion for Sanctions is DENIED.

The Parties shall adhere to the Scheduling Order issued contemporaneously with this Order.