**SUPER VISION INTERNATIONAL, INC., Plaintiff,**

v.

**MEGA INTERNATIONAL COMMERCIAL BANK CO., LTD., Defendant.**

**Case No. 07–20907–CIV.**

United States District Court, S.D. Florida.

Feb. 5, 2008.

---

Jeffrey R. Geldens, Esq., Mark Raymond, Esq. & Thomas Rebull, Esq., Miami, FL, for Super Vision International.

Maureen Vitucci, Esq., & Stephenie Anthony, Esq., Orlando, FL, for Mega International Commercial Bank.

## ORDER GRANTING MOTION
## TO DISMISS

ALAN S. GOLD, District Judge.

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss [DE 31] filed on September 6, 2007. Plaintiff Super Vision ("Super") has brought this action against Defendant Mega Bank ("Mega") under the Racketeer Influenced and Corrupt Organizations Act (RICO) for violations of § 1962(a), § 1962(c), and § 1962(d), and for breach of contract and fraudulent transfer. Defendant Mega Bank moves to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

After careful review of the Motion, Response, and Reply, as well as the case file, and after having heard oral argument on December 21, 2007, I grant Defendant's Motion to Dismiss.

## I. STANDARD OF REVIEW

On a motion to dismiss, the court accepts a complaint's well-pleaded allegations as true. *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148, 1150 (11th Cir.2001). The court construes the pleadings broadly and views the allegations in the complaint in the light most favorable to the plaintiff.

*Watts v. Fla. Int'l Univ., et al.*, 495 F.3d 1289, 1295 (11th Cir.2007).

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "more than mere labels and conclusions." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). Indeed, "a formulaic recitation of the elements of a cause of action will not do." *Watts*, 495 F.3d at 1295 (quoting *Bell Atlantic*, 127 S.Ct. at 1965).

Although the court does not analyze the probability of actual proof of the complaint's allegations on a motion to dismiss, a plaintiff must allege " 'enough factual matter (taken as true) to suggest' the required element." *Watts*, 495 F.3d at 1295. Under the law of this Circuit, the pleading must create "plausible grounds to infer." *Id.* Thus, a claim will survive a motion to dismiss if it identifies "facts that are suggestive enough to render [the element] plausible." *Id.* at 1296 (quoting *Bell Atlantic*, 127 S.Ct. at 1965).

█ Under the law of this Circuit, civil RICO claims must be pled with greater specificity, and they must satisfy the requirements of Federal Rule of Civil Procedures 9(b) [1]. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir.2007). Therefore, "RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Id.* at 1317–1318.

---

1. Rule 9(b) provides:
 (b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

## II. FACTUAL ALLEGATIONS

Based on my review of the Complaint [DE 22] and the Plaintiff's Civil RICO Statement[2] [DE 29], Plaintiff's relevant allegations are as follows:

Plaintiff Super Vision holds a judgment of almost $50 million that it won in 2003 after trial in Florida state court in Orange County against Samson Wu and Wu's companies and associates. Compl. ¶ 7. Based on the allegations in the Complaint, the Orange County case against Wu was brought because Wu stole, replicated, and sold Plaintiff Super Vision's products at lower prices, thus devastating Super Vision's market presence in the fiber optic industry. Id. at ¶ 9. Plaintiff Super recorded that judgment with the State of Florida. Id. at ¶ 11.

Based on the Complaint, Mega Bank is based in Hong Kong and has branches in Panama. Id. at 42. In May 2003, Wu allegedly acquired a residence in Panama City in his own name and mortgaged it to Mega Bank for $250,000. Id. at ¶ 13. In October 2003, Wu allegedly gave away that residence to Stefanie, S.A., a Wu-controlled entity, and Mega allegedly consented to this transfer. Id. at ¶ 14. At the time of this transfer, Angel Caballero was allegedly (1) the President and Legal Representative of Stefanie, S.A., and (2) a manager at Mega's Colon Free Zone Branch. Id. The transfer of Wu's residence to Stefanie, S.A. was allegedly recorded in Panamanian public records without mention of the previous owner, Samson Wu. Id. at ¶ 15.

In 2004, Plaintiff Super allegedly attempted to reach Wu's assets in Panama, and placed several hundred thousand dollars in accounts in order to acquire a required bond in connection with Panamanian legal process. Id. at ¶ 16. The Panamanian court refused to recognize the scope of the Orange County judgment and refused to allow Plaintiff Super to fully enforce the Orange County judgment. Id. at ¶ 17, 44.

The Florida state court in Orange County ordered Wu to make disclosures in aid of execution. Id. at ¶ 18. Pursuant to that state court order, Plaintiff Super obtained from Wu a consent form to verify funds in accounts in Panama which Wu owned or had an interest in, including those that Wu may have controlled through his business entities. Id. This consent form states that the disclosures are authorized in connection with any request to enforce the judgment in the state court case. Id. at ¶ 19. Specifically, the consent form signed by Wu states, in part:

> I, Samson Wu, of P.O. Box 720016, Miami, do hereby direct any bank or trust company at which I may have a bank account of any kind or at which a corporation has a bank account of any kind upon which I am authorized to draw, and its officers, employees and agents, to disclose all information and deliver copies of all documents of every nature in your possession or control which relate to said bank account to the law firm . . . for the period of January 2002 to the present date."

Compl., Ex. D.

Plaintiff's Panamanian counsel allegedly contacted Mega regarding Wu's accounts,

---

**2.** A Civil RICO Case Statement is required under Local Rule 12.1 for the Southern District of Florida and may be considered on a motion to dismiss. See Pierce v. Union Plant- ers Bank, N.A., 2002 WL 31750246, *1 n. 1 (S.D.Fla. Sept. 26, 2002) (citing In re Managed Care Litig., 135 F.Supp.2d 1253, 1261 (S.D.Fla.2001)).

and Mega denied knowledge of Wu or his holdings at Mega. Compl. at 20. Plaintiff's Panamanian counsel presented Mega with the consent form in person at the Colon Free Zone branch in May 2004. *Id.* at ¶ 21. Although Mega provided counsel access only to a small checking account in Wu's name, Mega was allegedly aware of other accounts to which the consent would apply. *Id.* Based on the Plaintiff's allegations, Mega did not acknowledge the extent of Wu's holdings, the existence of the Panama City residence, or the fact that an officer at Mega served on the board of a Wu-controlled entity. *Id.* at ¶ 38. Plaintiff's counsel sent Mega a letter memorializing his visit to Mega's Colon Free Zone branch. Following this visit, Mega allegedly did not correct any misrepresentations, comment on their accuracy, or otherwise provide Super with other information required by the consent form. *Id.* at ¶ 39.

According to the allegations in the Complaint, Plaintiff Super subsequently learned that Mega representatives visited with Wu in Miami–Dade County, Florida several times a year in connection with his banking relationship, and on these visits, the Mega official received checks and deposit slips from Wu and on one occasion opened an account for Wu. *Id.* at ¶ 22–23. These visits allegedly occurred at the offices of Marsam Trading, a Wu business that was implicated in theft of trade secrets at issue in the Florida state court litigation. *Id.* at ¶ 22. Wu allegedly served as an officer or controlling principal of Marsam Trading at material times. *Id.* at ¶ 25. Mega and Wu were allegedly associates from at least 1998. *Id.* at ¶ 31. In addition, financial reports and statements regarding the going concern status of the Wu business operations were allegedly provided on a regular basis to banks with which Wu had a business relationship, including Defendant Mega. *Id.* at ¶ 24.

Plaintiff Super alleges that Stefanie, S.A. is Wu's primary business in Panama and it is an affiliate of Marsam Trading. *Id.* at ¶ 25. Mega maintained accounts for Stefanie, S.A. *Id.* Wu signed an undated settlement agreement on behalf of Stefanie, S.A., Compl., Ex. F, and Super obtained this settlement agreement after the above communications with Mega occurred. *Id.* at ¶ 25. In September 2002, Mega allegedly stated via telephone that Stefanie, S.A. had an account with Mega, but Mega did not provide additional details such as authorized signers, account information, or specific account balances. *Id.* at ¶ 33, Ex. H.

Wire transfers between Marsam Trading's bank account at Ocean Bank in Miami and Stefanie, S.A. were allegedly made, including at least one transfer from Wu's business account at Ocean Bank in Miami to Stefanie, S.A. Compl. at ¶ 26, 32, Ex. G. Super learned of this one transfer after the communications described above with Mega. Compl. at ¶ 26.

Based on the above, Mega allegedly had an extensive relationship with Wu and was privy to the extent of his holdings, the existence of Stefanie, S.A. and other Wu-controlled entities, the funds on deposit and flowing through Wu-controlled accounts, and the properties Wu and his family controlled. *Id.* at ¶ 28.

Mega has allegedly never acknowledged that funds available for satisfaction of Super's judgement are in accounts at Mega, and Mega has refused to specifically admit the extent of Wu's involvement in Mega's business. *Id.* at ¶ 40. Plaintiff Super suspects, based on the consent form and independent investigation, that there are or were, at material times, some Wu funds in accounts at Mega, but Super cannot verify the extent of such funds without Mega's involvement. *Id.*

Because of Mega's relationship with Wu, Mega was allegedly part of a RICO enterprise that was intended to defraud Wu's creditors and make Wu "lawsuit proof," and this defrauded and damaged Super. *Id.* at ¶ 29. Based on the RICO Statement, there have been no criminal convictions as a result of the above alleged scheme. RICO Statement at 5. However, Plaintiff alleges that the threat of criminal activity continues. *Id.*

### A. *Plaintiff's RICO claim under § 1962(c)*

With respect to Plaintiff's claim under § 1962(c), the RICO enterprise was allegedly the Wu/Mega enterprise. *Id.* at ¶ 42. Plaintiff alleges that Mega's relationship with Wu constitutes an association-in-fact enterprise. RICO Statement, 2. This enterprise is allegedly the Wu creditor-fraud scheme, of which the Wu–Mega relationship is an element. *Id.* at 8.

The common purpose of this enterprise was to make Wu "lawsuit proof" and nurture and grow Wu's banking relationship with Mega. *Id.* Plaintiff alleges that this activity is an element of Mega's ongoing way of doing business because Mega maintains the Wu banking association, continues to rely on purported confidentiality protections of Panamanian law in refusing to correct its misrepresentations, and continues to profit by preventing Super from accessing information about Wu-controlled accounts. *Id.* at ¶ 44. Plaintiff alleges that Mega participated in a scheme to defraud Plaintiff and other Wu creditors by enabling Wu to use Mega's facilities and services as an instrumentality of that scheme. RICO Statement at 2. Furthermore, Mega allegedly knew or should have known, based on Mega's relationship with Wu, that Wu intended to establish a shell game, and Mega continued to permit this shell game. *Id.* at 6. Plaintiff alleges that Mega participates in the enterprise by means of its active consent to the deception it permits. *Id.* at 8.

Super bases its claims under § 1962(c) on Mega's alleged mail and wire fraud, as evidenced by Mega's participation in transfers of funds by Wu to and from Miami, executed by telephone, facsimile, mail and/or in-person communications from 2000 to 2001, and which continued throughout the association between Wu and Mega. Compl. at ¶ 41. Super alleges that funds were transferred by wire and confirmed by fax from Wu accounts at a Miami bank to the account at Mega of a Wu-controlled affiliate from 1998 until at least 2000, and which continued throughout the association between Wu and Mega. *Id.*

Plaintiff alleges that Mega made or permitted the following fraudulent communications, which allegedly constitute predicate acts: (1) permitting the transfer in 2003 of Wu's Panamanian residence and the subsequent recording of that transfer in Panamanian public records; (2) denying knowledge in 2004 of Wu's banking relationship with Mega upon inquiry by Super's Panamanian counsel; (3) failing to disclose at an in-person meeting in 2004 and materially misrepresenting the extent of Wu's holdings with Mega; and (4) in May 2004 to the present, materially omitting or failing to disclose facts that it allegedly had a duty to disclose to Super based on the consent form. *Id.* at 3–4. In addition, Mega allegedly made each of the above representations with knowledge of the likelihood that its content would be transmitted by means of the mail or wires to Super in Florida. *Id.* at 4.

Mega allegedly used two other wrongdoers—Samson Wu and Caballero—to exe-

cute the scheme to defraud and assist it in defrauding Super. *Id.* at 3. Mega allegedly permitted both individuals to use Mega accounts as storehouses for money that could be hidden from Wu's creditors. *Id.*

Super alleges that it was forced to rely on Mega as the source of Wu's personal banking information because such information is not easily verifiable by external sources. Compl. at ¶ 47. The consent form allegedly placed Super in Wu's shoes, and by signing the consent, Wu assigned his right to account information to Super. *Id.* Plaintiff Super alleges that its forced reliance on representations made by Mega forced Super to seek other sources of information, and Super has allegedly hired private investigators and engaged in Panamanian legal process, public records searches, and inquiries regarding other banks. *Id.* at ¶ 46.

Super alleges that Mega's actions are a proximate cause of damage to Super and are evidence of a scheme to deprive Super of (1) its judgment, (2) monies expended in attempts to execute the judgment, and (3) information. Compl. at ¶ 48. Super also alleges that other Wu creditors have been harmed, including Ocean Bank. Ocean Bank assigned its claims against Wu to Super. *Id.* at ¶ 49.

B. *Plaintiff's RICO claim under § 1962(a)*

With respect to Plaintiff's claim under 1962(a), the RICO enterprise was allegedly Mega. *Id.* at ¶ 51. Plaintiff alleges that this section of RICO was violated because Mega allegedly benefits from the investment and retention of funds derived from unlawful activities. RICO Statement at 9. Mega conducts business in the United States and abroad and uses the proceeds of account deposits in such business. Compl. at ¶ 51. Mega allegedly received income, such as fees or account charges, that was derived, directly or indirectly, from Wu's pattern of racketeering activity and stolen or converted funds. Compl. at ¶ 52; RICO Statement at 10. Therefore, Mega is allegedly a beneficiary of funds that are the proceeds of Wu's illicit activities, and Mega uses these funds in its operations. RICO Statement at 12. Plaintiff alleges that Mega had reason to believe that Wu intended to defraud his creditors, and that the funds Mega received from Wu were not legally his to place in accounts at Mega, but Mega continued to receive those funds. Compl. at ¶ 52; RICO Statement at 10.

Other wrongdoers—Samson Wu and Caballero—were allegedly involved in Mega's retention of these funds, and one or more Mega officers were aware of the scheme and enabled Mega's retention of these funds. RICO Statement at 10. The predicate acts of racketeering for Super's claims under § 1962(a) are violations of 18 U.S.C. § 2315, which deals with the sale or receipt of stolen good, securities, and money.[3]

Plaintiff alleges that Mega knowingly received, possessed, or concealed money

---

**3.** 18 U.S.C. § 2315 provides, in relevant part: Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, or pledges or accepts as security for a loan any goods, wares, or merchandise, or securities, of the value of $500 or more, which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken, knowing the same to have been stolen, unlawfully converted, or taken; ... Shall be fined under this title or imprisoned not more than ten years, or both.

valued at $5000 or more, allegedly constituted predicate acts, as evidenced by the following: First, in 2004, Mega continued to allow Wu and Wu entities to place funds in Mega, although Mega knew that Wu was subject to a judgment of millions of dollars. Compl. at · ¶ 54. Second, the Orange County judgment included Marsam Trading, and the consent form listed Marsam Trading as a defendant in the Orange County lawsuit. *Id.* Although Marsam Trading was allegedly affiliated with Stefanie, S.A. and Stefanie, S.A. allegedly had an account at Mega, Mega refused to admit that the Stefanie, S.A. account existed. *Id.* Third, Stefanie, S.A. allegedly had a Mega official on its board in 2003 and received wire transfers into its account at Mega from Marsam Trading, but Mega did not admit in 2004 to knowledge of Wu's business holdings. *Id.* Fourth, although Wu's wife was allegedly also a principal of Stefanie, S.A. and subject to the Orange County judgment, Mega permitted the transfer in October 2003 of the Panamanian residence to Stefanie, S.A. *Id.;* RICO Statement at 11. Mega allegedly held a mortgage on this residence and the transfer was allegedly not a transaction at arm's length. Compl. at ¶ 54; RICO Statement at 11. Fifth, Mega allegedly visited and received financial information from Wu's business in Miami, which had been implicated in the Orange County lawsuit, thus making it likely that Mega was aware of the nature of proceeds deposited in Wu's accounts. Compl. at ¶ 54. Sixth, Mega continued to retain and use for its benefit such deposited funds. RICO Statement at 11.

Plaintiff alleges that Mega was aware that Wu's money was subject to execution, but frustrated Plaintiff's efforts. Compl. at ¶ 54. Mega allegedly knew of the nature of Wu's lawsuit-proofing efforts and allegedly helped Wu keep his funds subject to execution from Super by willingly providing an extra layer of protection. *Id.* at ¶ 55. Plaintiff alleges that proceeds from Wu's fraudulent scheme were deposited into Wu's or Wu-controlled entities' accounts at Mega. *Id.* at ¶ 56.

Plaintiff alleges that as a result, it has been unable to satisfy the judgment against Wu, has spent funds in pursuit of Wu's accounts and funds at Mega, and has experienced adverse effects on its business operations as a result. *Id.* at ¶ 58. In addition, Plaintiff alleges that Mega's retention of Wu-controlled funds injures the funds, which are specific property of Super Vision. RICO Statement at 15. Plaintiff alleges that these damages were proximately caused by Mega's actions because Mega prevented Super from acquiring any information regarding Wu's holdings at Mega. Compl. at ¶ 59. Based on the RICO Statement, the alleged RICO violation of § 1962(a) directly injures Super on a continuing and ongoing basis. RICO Statement at 15.

### C. *Plaintiff's RICO conspiracy claim under § 1962(d)*

Mega allegedly agreed to the overall objective of the RICO offenses under § 1962(a) and § 1962(c), and this agreement was allegedly in concert with one or more of Mega's agents, Caballero, and/or Wu. *Id.* at ¶ 60; RICO Statement at 17. One Mega agent allegedly involved was a Mega representative who visited Wu in Miami, as described previously. Compl. at ¶ 61. Super and Wu's creditors were allegedly deprived of funds to which they are entitled through a common plan or ordered scheme, which involved the establishment of multiple business entities, entity bank accounts, and individual accounts,

all of which were under the de facto control of Wu. RICO Statement at 18. The enterprises relevant to Plaintiff's RICO conspiracy claim are the same enterprises alleged under § 1962(a) and § 1962(c). *Id.*

According to Plaintiff's allegations, the overt acts allegedly committed in furtherance of the conspiracy included the following: (1) denying the extent of Wu's holdings upon initial inquiry in 2004; (2) refusing to disclose information to Super regarding Wu's holdings at an in-person meeting in 2004; (3) permitting the transfer in 2003 of Wu's residence to Stefanie, S.A.; (4) recording the transfer of the residence without reference to the previous owner; (5) regular visits by a Mega representative to Marsam Trading in Miami, including multiple visits in 2000–2001, to further the Wu–Mega association; (6) regular transfers reflecting transactions that were not at arms-length between Wu entities, funneled through Mega to Stefanie, S.A.; (7) regular payments into Panamanian Wu-controlled entities' accounts that were payments for Wu's United States-based entities; (8) permitting a Mega officer (Caballero) in 2003 to hold office in Stefanie, S.A., but disavowing knowledge of Wu's holdings in 2004; and (9) refusing to correct misrepresentations regarding Wu's holdings at Mega and the nature of Mega's relationship with Wu. Compl. at ¶ 62.

Plaintiff alleges that Wu, Caballero, and other unknown individuals had a common objective to further the illegal acts alleged in Plaintiff's RICO claims under § 1962(a) and § 1962(c). *Id.* Plaintiff alleges in the alternative that the above-listed acts demonstrate that Mega agreed to the overall objective of the conspiracy to conceal Wu's funds from Super by unlawful means because the acts allegedly served to effect an illegitimate objective through irregular and suspicious business activity. *Id.*

Caballero was allegedly a Mega official who partnered with Wu in certain business endeavors and permitted Mega to serve as a useful instrument in effecting racketeering activities. *Id.* at 63. Mega, in concert with one or more of its agents, allegedly received benefits from the above offenses, including the retention of Wu's funds in Mega's accounts, and Mega allegedly continues to permit Mr. Wu's ruse. *Id.* at 64–65.

### D. *Breach of contract*

With respect to Plaintiff's claim for breach of contract, Plaintiff alleges that Mega and Wu had an agreement or enforceable contract which governed the account relationship with Wu and Wu's related entities. *Id.* at 67. This agreement allegedly entitled Wu to obtain information regarding his account balances and data from Mega. *Id.* at 68. This right to information was allegedly assigned to Plaintiff by means of the consent form signed by Wu, obtained in connection with the Orange County judgment. *Id.* at 69.

By refusing to disclose account information to Plaintiff in May 2004, Mega allegedly breached its obligations to Wu because the right to that information was assigned to Plaintiff Super. *Id.* at 70. Super was damaged as a result of this alleged breach. *Id.* at 71.

### E. *Fraudulent Transfer*

With respect to this claim against Mega, Plaintiff alleges that the Orange County judgment and the judgments assigned to Plaintiff by Ocean Bank create a debt and obligation against Wu in Super's favor. *Id.* at 72. Wu allegedly transferred funds

into accounts at Mega from at least 1998 until at least 2004, although Wu had knowledge of the above obligations. *Id.* at 73. Those funds are allegedly property of Super. *Id.* at 74. The transfers were allegedly made to accounts held by Wu, Wu-controlled entities, or other insiders, and Mega accepted such transfers. *Id.* at 75. Mega allegedly accepted property with knowledge, from at least 2004, that the funds at issue are subject to a valid debt to another creditor. *Id.* at 79.

In addition, Mega allegedly permitted the transfer of Wu's Panamanian residence, subject to the Orange County judgment, to a Wu-controlled entity, where the transfer was a donation and not an ordinary business transaction. *Id.* at 76. Mega allegedly holds a mortgage on the Panamanian residence. *Id.*

Wu's transfers were allegedly intended to hinder, delay or defraud Wu's creditors. *Id.* at 77. Plaintiff alleges that the bank accounts at Mega are sham loans because a bank account creates a debtor-creditor relationship. *Id.* at 78. Plaintiff alleges in the alternative that the funds in the bank accounts at Mega are improperly concealed to hinder, delay or defraud creditors. *Id.*

Defendant Mega Bank moves to dismiss all claims under Rule 12(b)(6).

## III. DISCUSSION

### A. Plaintiff's civil RICO claims under 18 U.S.C. § 1962(c)

Under the law of this Circuit, a plaintiff "must satisfy four elements of proof: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" in order to establish a civil RICO violation under § 1962(c). *Williams v. Mohawk Indus., Inc.,* 465 F.3d 1277, 1282 (11th Cir. 2006). Subsection § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

In addition, Civil RICO plaintiffs must also show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason' of the substantive RICO violation." *Id.* at 1282–83; 18 U.S.C. § 1964(c)[4]. Where mail or wire fraud is alleged to be the predicate RICO activity, the plaintiff must show that "(1) the defendant intentionally participated in a scheme to defraud another of money or property, (2) the defendant used the mails or wires in furtherance of that scheme, and (3) the plaintiff relied to his detriment on the defendant's misrepresentations." *Kemp v. Am. Tel. & Tel. Co.,* 393 F.3d 1354, 1359 (11th Cir.2004).

 I will first address the issue of whether Plaintiff Super has alleged Mega's involvement in an enterprise for its claim under § 1962(c). Under the law of this

---

**4.** 18 U.S.C. § 1964(c) provides, in relevant part:

Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

Circuit, the plaintiff "must establish 'conduct of an enterprise' and that the enterprise had a common goal." *Williams,* 465 F.3d at 1283 (citing *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). In addition, the defendant "must participate in the operation or management of the enterprise itself" and " 'must have some part in directing' the affairs of the enterprise." *Williams,* 465 F.3d at 1284–85 (quoting *Reves v. Ernst & Young,* 507 U.S. 170, 179, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)). As such, the civil RICO defendant "must exercise 'some degree of direction' of the enterprise as well as an element of 'control,' " and "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs', not just their own affairs." *In re Managed Care Litig.,* 298 F.Supp.2d 1259, 1276 (S.D.Fla.2003) (citing *Reves,* 507 U.S. at 179, 184–185, 113 S.Ct. 1163).

Here, Plaintiff Super has alleged that the enterprise in its claim under § 1962(c) is the "Mega–Wu Enterprise." Taking the Plaintiff's allegations as true and in the light most favorable to Plaintiff, Super alleges that Mega facilitated Wu's transfers and furthered the scheme to make Wu lawsuit-proof. At best, one of Mega's officers also served on the board of a Wu company, and one or more of Mega's employees regularly visited Wu in Miami in connection with his accounts at Mega. Mega also allegedly allowed Wu to transfer his Panamanian residence to a Wu-controlled company, allowed Wu to transfer funds, and refused to comply with the consent form or otherwise provide information about Wu's accounts to Super.

Considering these allegations together, I conclude that Plaintiff Super has not al-

leged the that Mega was sufficiently involved in the alleged enterprise, as required to hold Mega liable for civil RICO violations under § 1962(c). Plaintiff has not alleged sufficient facts to show that Mega participated in the operation or management of the alleged Mega–Wu enterprise itself. Based on Super's allegations, Mega did not control any aspect of the alleged enterprise, nor did Mega control the funds from Wu or Wu's companies. *See Chase & Sanborn Corp. v. Societe Generale,* 848 F.2d 1196, 1200, n. 9 (11th Cir.1988). Therefore, Mega did not exercise the requisite control over the alleged Mega–Wu enterprise, and Super's claims against Mega under § 1962(c) must therefore be dismissed.

■ Furthermore, as noted by the Eighth Circuit, "[b]ankers do not become racketeers by acting like bankers." *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank,* 934 F.2d 976, 981 (8th Cir.1991); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 950 (11th Cir.1997) (noting policy concerns in holding banks liable for knowing the source of transferred funds). It is noteworthy that, in this case, Super only alleges that Mega benefitted from its relationship with Wu by receiving fees and deposits.

Although Plaintiff cites to the two *Gutierrez* opinions in support of its proposition that a bank can be part of an RICO enterprise, those opinions are factually distinguishable from this case. *See Gutierrez v. Givens,* 1 F.Supp.2d 1077 (S.D.Cal.1998); *Gutierrez v. Givens,* 989 F.Supp. 1033 (S.D.Cal.1997). In the *Gutierrez* case [5], the plaintiffs had alleged that co-defendant Givens controlled the bank by directly

5. The two *Gutierrez* opinions are from the same underlying case.

owning the state maximum of 25% of outstanding shares and controlling substantial additional shares, and that Givens had represented to the public that he owned the bank. *Gutierrez*, 1 F.Supp.2d at 1080. The Gutierrez plaintiffs further alleged that the bank was not operating as a legitimate, independent institution, but was instead a pawn of the RICO co-defendant. *Id.* at 1086. In contrast, Super does not allege in this case that Mega was controlled or owned by Wu, or that Mega was not operating as a legitimate, independent financial institution. Therefore, I find the two *Gutierrez* opinions unpersuasive.

■ I also dismiss Super's claim under § 1962(c) for lack of reliance and proximate cause, requirements that flow out of the "by reason of" language in 18 U.S.C. § 1964(c). *Williams*, 465 F.3d at 1287. When a civil RICO claim is predicated on mail or wire fraud, the plaintiff must prove the following elements:

> "(1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relief upon by a reasonable person, (8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages."

> *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360 (11th Cir.2002).

■ Therefore, the plaintiff has the burden of proving that he "relied to his detriment on the defendant's misrepresentations made in furtherance of that scheme."

*Id.; see Kemp*, 393 F.3d at 1359. Such reliance may not be presumed in non-securities cases. *Sikes*, 281 F.3d at 1361–64 (holding that it was error for lower court to presume reliance and noting that "neither this circuit nor the Supreme Court has extended a presumption of reliance outside the context of securities cases").

■ The plaintiff must also show that his injury was "proximately caused of the commission of the predicate acts." *Byrne v. Nezhat*, 261 F.3d 1075, 1110 (11th Cir. 2001). Under the law of this Circuit, the proximate cause requirement in RICO is interpreted to mean that the injury in mail or wire fraud cases must be caused by reliance on the defendant's fraudulent misrepresentations. *Id.* at 1110, n. 73 ("In *Pelletier*, we explain that the circuit courts hold differing views on whether the proximate cause requirement 'limits damages recoverable to those caused directly by the predicate act (e.g., by reliance on the defendant's fraudulent representations) or to those caused indirectly by the predicate act (e.g., by purchasing property at a price that has been artificially inflated by a scheme to defraud).' *Id.* at 1499. *We adhere to the more restrictive view.*") (emphasis added) (citing *Pelletier v. Zweifel*, 921 F.2d 1465, 1499 (11th Cir.1991)).

■ In this case, Super has failed to allege that it relied to its detriment on Mega's alleged misrepresentations. In fact, Super's allegations, even taken in the light most favorable to Super, illustrate the opposite—that Super did not believe Mega's representations and acted accordingly, by hiring private investigators and attempting to reach Wu's holdings through the Panamanian court system.

■ Even if Super had alleged that it relied on Mega's alleged misrepresenta-

tions, Super has not alleged that it was injured by reason of any such reliance. The injuries of which Super complains [6]— that Super has been unable to execute it judgment against Wu, that Super has been unable to obtain information that it is entitled to pursuant to the consent form, that Super has spent funds in unsuccessfully trying to obtain this information from Mega, and that Super has been forced to spend monies and expend energies on such things as private investigators in its attempts to uncover the information from other sources—are not alleged to have occurred because of any reliance by Super on Mega's representations. As stated previously, this Circuit takes a restrictive view of the proximate cause requirement in civil RICO cases. Although Super may have alleged an injury, Super has not alleged either that it relied on the misrepresentations by Mega or that it was injured by reason of such reliance. Therefore, I dismiss Super's claims under § 1962(c) for these additional reasons.

Mega makes additional arguments for dismissal of Super's claims under 1 § 962(c), but because I dismiss these claims for the reasons stated above, I do not address Mega's remaining arguments.

### B. *Plaintiff's RICO claims under § 1962(a)*

As stated in the previous section, for Civil RICO claims, plaintiffs must show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason' of the substantive RICO violation." *Williams*, 465 F.3d at 1282–83; 18 U.S.C. § 1964(c). For Super's claim under § 1962(a) [7], Super alleges that it was harmed because it has not been able to execute on its judgment against Wu, it had to seek relief in the Panamanian legal system, do public records searches, and conduct private investigations, and it incurred added expenses in connection with its efforts to execute on the Wu judgment.

■ Super alleges that the predicate acts under this claim were mail and wire fraud as well as violations of 18 U.S.C. § 2315, which deals with the sale or receipt of stolen goods, securities or money.

---

**6.** I also note that under the law of this Circuit, "[a] plaintiff in a civil RICO action, when relying on the predicate acts of mail fraud, must show proof of loss of tangible property resulting from the defendant's conduct." *O'Malley v. O'Neill*, 887 F.2d 1557, 1559 n. 5 (11th Cir.1989).

**7.** Subsection 1962(a) of the RICO statute provides, in its entirety

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any en-

terprise which is engaged in, or the activities which affect, interstate or foreign commerce. A purchase of securities on the open market for the purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

18 U.S.C. § 1962(a).

18 U.S.C. § 2315. According to the allegations, Mega retained and invested funds charged for Wu's wire transfers or other fees associated with Wu's accounts, and these funds allegedly constitute the proceeds of a pattern of racketeering activity that were invested in violation of § 1962(a).

For RICO claims under § 1962(a), the majority of other Circuits has interpreted this subsection to require that the victim suffer an injury that resulted from the investment of unlawfully obtained proceeds of racketeering activity. *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 828–829 (9th Cir.2003) ("Section 1964(c) confers standing to bring civil RICO claims only upon those persons 'injured in [their] business or property by reason of a violation of section 1962.' Read together [with § 1962(a)], these two provisions require that 'a plaintiff seeking civil damages for a violation of 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income.' ") (citing *Nugget Hydroelectric LP. v. Pacific Gas & Elec. Co.*, 981 F.2d 429 (9th Cir.1992)); *Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 895 (8th Cir.1999); *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 929 (5th Cir.2002); *Vemco, Inc. v. Camardella*, 23 F.3d 129, 132 (6th Cir.1994); *Glessner v. Kenny*, 952 F.2d 702, 708–710 (3d Cir.1991); *Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229–1230 (D.C.Cir.1991); *Ouaknine v. MacFarlane*, 897 F.2d 75, 82 (2d Cir.1990); *Rodriguez v. Banco Central*, 727 F.Supp. 759, 770–771 (D.P.R.1989), aff'd in part and vacated in part, 917 F.2d 664 (1st Cir.1990); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149–51 (10th Cir.1989), cert. denied, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

The Fourth Circuit has declined to impose this "investment injury" requirement, *Busby v. Crown Supply*, 896 F.2d 833 (4th Cir.1990), and this issue remains undecided in the Seventh Circuit. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 779, n. 6 (7th Cir.1994) ("However, because we conclude that Vicom has failed to demonstrate the existence of a 'pattern' of racketeering activity, we need not state definitively our view on the majority's requirement that an allegation of investment-use is necessary to assert standing under 1962(a).")

 Although the Eleventh Circuit has yet to directly address this issue, at least one court in this District has adopted the "investment injury" requirement. *In re Sahlen & Assocs., Inc. Sec. Litig.*, 773 F.Supp. 342, 367 (S.D.Fla.1991) (Hoeveler, J.). As reasoned by Judge Hoeveler, although 1962(a) does not prohibit the mere receipt of racketeering income,

> the statute does forbid a person who has received such income from investing or using it in the proscribed manner. Section 1964(c) provides a civil remedy only to those persons harmed "by reason of a violation of section 1962." Thus pleading injury from the racketeering acts, without more, is insufficient to state a claim under 1962(a), as that provision does not prohibit those acts.

*In re Sahlen*, 773 F.Supp. at 367.

Although two cases from this District have interpreted the injury requirement in 1962(a) more expansively, I find these cases unpersuasive. *See In re Managed Care*, 150 F.Supp.2d 1330, 1351 (S.D.Fla. 2001) (following the Fourth Circuit's interpretation of 1962(a), but where plaintiffs did not plead an actual violation of § 1962(a) but rather alleged conspiracy

under § 1962(d)); *Avirgan v. Hull,* 691 F.Supp. 1357, 1362 (S.D.Fla.1988) (following the more expansive interpretation of injury under § 1962(a) but granting summary judgment in favor of defendants on RICO claims because plaintiffs still failed to prove proximate cause), aff'd on other grounds, 932 F.2d 1572 (11th Cir.1991) (affirming with no mention of § 1962(a)). I note that *Avirgan* was decided before the majority of the circuit courts had ruled on this issue, and the Eleventh Circuit did not address § 1962(a) on appeal. In addition, the plaintiffs in *Managed Care* had not plead an actual violation of § 1962(a), and for that reason it is distinguishable from the case before me today.

For the reasons articulated by Judge Hoeveler, I find persuasive the "investment injury" interpretation, followed by the majority of circuits. Although the Eleventh Circuit has not yet directly addressed this issue, I conclude that the Eleventh Circuit would likely follow the rulings of the majority of circuits and require that the plaintiff in a civil RICO action under § 1962(a) show an injury resulting from the investment of racketeering proceeds. Here, Super has failed to allege that it has suffered an injury resulting from Mega's alleged investment of the fees and charges it retained from Wu's accounts.[8] Therefore, I dismiss Super's claims under § 1962(a).

Because I dismiss Super's claims under § 1962(a) for the reasons stated above, I do not address Mega's remaining arguments.

### C. *Plaintiff's claims of civil RICO conspiracy under § 1962(d)*

 Subsection 1962(d) of the RICO statute provides that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). In order to state a claim for civil RICO conspiracy, a plaintiff must "allege an illegal agreement to violate a substantive provision of the RICO statute." *Jackson v. BellSouth Telecomm.,* 372 F.3d 1250, 1269 (11th Cir.2004) ("To be guilty of conspiracy, ... parties must have agreed to commit an act that is itself illegal-parties cannot be found guilty of conspiring to commit an act that is not itself against the law.") (citing *United States v. Vaghela,* 169 F.3d 729, 732 (11th Cir.1999)).

 Super does not allege new allegations in its count for RICO conspiracy, but instead relies on the same facts it alleged for the RICO claims under § 1962(a) and § 1962(c). Because I concluded that Plaintiff had failed to state a claim for civil RICO under § 1962(c) or § 1962(a), Plaintiff Super's RICO conspiracy claim necessarily fails. *Rogers v. Nacchio,* 241 Fed. Appx. 602, 609 (11th Cir.2007) ("Thus, where a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails.") As articulated by the Eleventh Circuit, where the complaint fails to state a substantive RICO claim, a RICO conspiracy allegation "simply concludes that the defendants 'conspired and confederated' to commit conduct which in itself does not constitute a RICO violation." *Jackson,* 372 F.3d at 1269.

 Furthermore, in order to state a claim for civil RICO conspiracy, a plaintiff

---

**8.** Although I need not address this issue because I dismiss the § 1962(a) claims on other grounds, I note that there exists authority which suggests that the fees and account charges received by Mega do not constitute proceeds of racketeering activities. *See Dongelewicz v. PNC Bank Nat'l Ass'n,* 104 Fed. Appx. 811, 818 (3d Cir.2004).

"must allege facts to support an agreement to violate a substantive provision of the RICO statute." *Carter v. MGA, Inc.*, 189 Fed.Appx. 893, 894 (11th Cir.2006) ("But plaintiffs alleged no facts to show or to create a reasonable inference that Defendants made an agreement. Plaintiff's conclusory allegations that Defendants conspired with each other are insufficient to survive a motion to dismiss.") Although Plaintiff Super alleges that Mega agreed to violate RICO, this conclusory allegation is unsupported by actual allegations of fact which would create an reasonable inference that Mega made such an agreement.

Therefore, I dismiss all of the RICO claims against Defendant Mega under Counts I, II, and III of the Amended Complaint.

### D. *Plaintiff's breach of contract claim*

▮ Plaintiff Super alleges in Count IV that by means of the consent form, Wu assigned to Super his contractual rights to demand disclosure of banking information at Mega. Super further alleges that when Mega did not disclose certain account information to Super, Mega breached its contractual obligation. This claim fails for two reasons.

First, Plaintiff Super has not sufficiently alleged that it received an assignment of Wu's rights under his contract with Mega. Plaintiff conclusorily alleges that it received an assignment pursuant to the consent form, but the actual consent form does not on its face contain language assigning such rights to Super. Although I accept well-pleaded allegations as true on a motion to dismiss, a plaintiff must plead more than legal conclusions and must allege enough factual matter to suggest the required element. *Watts*, 495 F.3d at

1295. Here, the factual matter alleged by Super does not support its conclusion that Wu assigned his contractual rights to Super. *See Leesburg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr., Inc.*, 972 So.2d 203, 206 (Fla. 5th DCA 2007) ("An assignment is a transfer of all the interests and rights to the thing assigned. Following an assignment, the assignee 'stands in the shows of the assignor' and the 'assignor retains no rights to enforce the contract' at all.") (internal citations omitted). Based on the language of the consent form and taking all inferences in favor of Super, Super has not sufficiently alleged that it received an assignment of Wu's rights under his contract with Mega.

Second, even if Super had sufficiently alleged such an assignment, Super has not alleged that it was in privy to the contract between Mega and Wu. *See White v. Exchange Corp.*, 167 So.2d 324, 326 (Fla. 3d DCA 1964) ("It is elementary that a person not a party to nor in privy with a contract does not have the right to [sue] for its breach."). Therefore, Super's claim for breach of contract, based on the alleged assignment contained in the consent form, fails to state a claim and is dismissed.

### E. *Fraudulent Transfer*

▮ With respect to Count V, Super argues that Mega should be held liable for fraudulent transfer because Mega allegedly had knowledge of Wu's obligations to Super but still accepted Wu's transfers of funds into accounts held by Wu or Wu entities or insiders. The Florida statutes on fraudulent transfers, the Florida Uniform Fraudulent Transfers Act (FUFTA) provide, in part:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a

creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or

(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation . . .

Fla. Stat. § 726.105.

 Under Florida law, there is no cause of action under the FUFTA against a party who assists or aids and abets a fraudulent transfer, where that party does not come into possession of the property. *Freeman v. First Union Nat'l Bank,* 865 So.2d 1272, 1277 (Fla.2004) ("[W]e conclude that FUFTA was not intended to serve as a vehicle by which a creditor may bring suit against a non-transferee party (like First Union in this case) for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer."); *Danzas Taiwan, Ltd. v. Freeman,* 868 So.2d 537, 537 (Fla. 3d DCA 2004) ("[T]here is no cause of action under the fraudulent conveyance statute against one 'who allegedly assists a debtor in a fraudulent conversion or transfer of property, where the person does not come into possession of the property.' ")

 Here, Super alleges that the funds were transferred to Wu's and Wu's entities' accounts at Mega; Super does not allege that Mega was the intended recipient of the transferred funds. Furthermore, although Super alleges that Mega accepted transfers of Wu's funds and held a mortgage over Wu's Panamanian residence, Super does not allege that Mega actually controlled the funds at issue. *See*

*In re Chase & Sanborn Corp.,* 848 F.2d at 1200(stating that where defendants "simply held the property as agents or conduits for one of the real parties to the transaction . . . [D]efendants never actually *controlled* the funds and therefore it would be inequitable to allow recovery against them.") (emphasis in original). Although a bank can gain control of funds that are transferred to it, such as when a bank receives a transfer to pay of a debt owed to the bank, "[w]hen banks receive money for the sole purpose of depositing it into a customer's account, on the other hand, the bank never has actual control of the funds." *Id.*

Based on the above authority, I conclude that Super has not stated a claim for fraudulent transfer against Mega because at best, Mega was the conduit, not the transferee, and because Mega is not alleged to have controlled the funds at issue. Therefore, I dismiss the fraudulent transfer claims in Count V of the Amended Complaint.

Therefore, I grant Mega's Motion to Dismiss, and I dismiss Counts I through V. Accordingly, it is hereby

ORDERED AND ADJUDGED that

1. The Motion to Dismiss [DE 31] is GRANTED without prejudice to file an amended complaint within 20 days of the date this order is docketed. If an amended complaint is not timely filed, the complaint shall be dismissed with prejudice and the case will be closed.

2. The Motion to take judicial notice of state court judgment [DE 12] is GRANTED.